# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL V.F. BLOOM, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:12-cv-00057 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN JENNINGS, | ) | By: Norman K. Moon |
|     Defendant. | ) | United States District Judge |

Daniel V.F. Bloom, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, against the Warden of Augusta Correctional Center ("Augusta"), alleging that he violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Bloom's rights to free exercise of religion, free speech, and equal protection, the Ex Post Facto Clause, and the Eighth Amendment prohibition against cruel and unusual punishment. The Warden has filed a motion for summary judgment and Bloom has responded with his own motion for summary judgment, making this matter ripe for disposition. Upon consideration of this action, I find that the Warden's motion for summary judgment should be granted and Bloom's denied.

## I.

Bloom is currently incarcerated at Augusta and defendant Jennings is the Warden there. Bloom alleges that upon his arrival at Augusta, the following items were confiscated from him: (1) a rosary, (2) a cross necklace, (3) a CD, (4) a back support device, and (5) a knee support device. Bloom argues that Warden Jennings violated RLUIPA by depriving Bloom of his rosary and cross necklace; violated the First Amendment right to free exercise of religion by depriving Bloom of his rosary and cross necklace; violated the First Amendment right to free speech by depriving Bloom of his CD; violated the Fourteenth Amendment right to equal protection by

depriving Bloom of his cross necklace, CD, and back and knee support devices; violated the Ex Post Facto Clause by depriving Bloom of his cross necklace; and violated the Eighth Amendment prohibition against cruel and unusual punishment by denying Bloom of his rosary, cross necklace, CD, and back and knee support devices.

According to the defendant and the affidavits he provides in support of his motion for summary judgment, all of Bloom's items were confiscated upon Bloom's arrival at Augusta because they were deemed contraband for various reasons. Bloom's rosary was confiscated because he had added beads to it, which violated the policy prohibiting possession of altered or modified property without written permission. *See* Virginia Department of Corrections Operating Procedure ("OP") 802.1. In addition, Bloom's rosary contained ruby-colored beads, while only black and white beads are allowed pursuant to OP 802.1. Bloom's cross necklace was confiscated because the cross medallion exceeded the maximum size of a medallion permitted by OP 802.1. Bloom's CD was confiscated because it was homemade and recordable, which violated institutional policy. Bloom's back and knee support devices were confiscated because they contained metal stays in them, which violated the institutional policy banning medical appliances with metal stays. With regard to the back and knee support devices, defendant states that Bloom was offered replacement items which were free of metal stays at no cost to him, but he refused them.

## II. Back and Knee Support Devices

Bloom alleges that the defendant violated his rights by prohibiting his back and knee support devices. However, I find that Bloom failed to fully exhaust his administrative remedies as to these items and, therefore, I will grant defendant's motion for summary judgment as to all of Bloom's claims concerning these items.

The Prison Litigation Reform Act requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions. 42 U.S.C. § 1997e(a); *see also, Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002) (citing *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999)). Exhaustion of remedies is required "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731 (2001).

Operating Procedure 866.1, Inmate Grievance Procedure, provides the mechanism for inmates to resolve complaints, appeal administrative decisions, and challenge the substance of procedures within the Virginia Department of Corrections ("VDOC"). The process provides corrections administrators a means to access potential problem areas and, if necessary, correct those problems in a timely manner. All matters which affect an inmate personally are grievable, except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal Court decisions, laws, and regulations, and other matters beyond the control of the VDOC. Inmates are oriented to the Offender Grievance Procedure when they are received into the VDOC. Pursuant to OP 866.1, an inmate should first try to resolve his issue informally, which can be done by filing an Informal Complaint. If the issue cannot be resolved informally, the inmate may file a Regular Grievance. There are three levels of review for Regular Grievances. Level I reviews are conducted by the Warden or Superintendent of the facility. If the inmate is not satisfied with the Level I determination, he may appeal to Level II which is conducted by the Regional Director, Health Services Director, or Chief of Operations for Classification and Records. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Deputy Director or Director of the VDOC conducts review. Each level of review provides a set length of time for the prison officials to

respond. Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal to the next level of review.

Bloom filed a Level I Regular Grievance concerning the confiscation of his back and knee support devices; however, he did not appeal the Level I response to Level II. In response to the defendant's argument that Bloom's claims concerning the back and knee support devices should be dismissed as unexhausted, Bloom states that he "elected not to do this because the issue surrounding the medical devices was one of security and institutional policy, not of appropriateness of the devices" to Bloom's medical condition and "the Director of Health Services had no authority or jurisdiction to rule on that issue." Bloom also argues that the policy at issue, a ban on medical devices containing metal stays, was a institutional rule, not a state-wide rule and, thus, he believes he should not be held responsible for grieving the issue beyond the Warden. Regardless of whether Bloom believed exhaustion of administrative remedies to be futile, he nevertheless is required to fully exhaust his claims prior to filing a § 1983 action. Because it is clear that Bloom did not fully exhaust his claims concerning the back and knee support devices, I will grant defendant's motion for summary judgment as to all of Bloom's claims concerning these items.

### III. RLUIPA

Bloom alleges that defendant's prohibition of his rosary and cross necklace violates Bloom's rights under RLUIPA. I find that Bloom has failed to establish that the defendant has imposed a substantial burden on his religious exercise and, therefore, I will grant defendant's motion for summary judgment as to Bloom's RLUIPA claims.

RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise" of an inmate unless the government can demonstrate that the burden "(1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The plaintiff bears the initial burden of establishing that the government's actions substantially burdened his exercise of religion and once such a showing is made, the government bears the burden of persuasion that its practice is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. *Adkins v. Kaspar,* 393 F.3d 559, 567 n. 32 (5th Cir. 2004); *Civil Liberties for Urban Believers v. Chicago,* 342 F.3d 752, 760 (7th Cir. 2003). A substantial burden on religious exercise occurs when a state or local government "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (*quoting Thomas v. Review Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 70, 718 (1981) and *Sherbert v. Verner*, 374 U.S. 398 (1963)). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his [or her] religion." *Krieger v. Brown*, No. 10-7576, 2012 WL 5447889, at *3 (4th Cir. Nov. 8, 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007). Although RLUIPA must "be construed in favor of a broad protection of religious exercise," 42 U.S.C. § 2000cc-3(g), it must

be applied "with particular sensitivity to security concerns," *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). In this regard, "RLUIPA [is not meant] to elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* Courts are required to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of costs and limited resources." *Id.* at 723.

In support of his RLUIPA claims, Bloom states that "he is being substantially burdened from practicing his faith in a manner necessary to the practice of his religion," however, he provides no facts to support his conclusory allegation of a substantial burden. In response to defendant's motion for summary judgment, Bloom states that wearing a cross medallion on a necklace around his neck is "certainly not required by the laws of the Roman Catholic Church or, any other Christian sect," but it nevertheless "is religiously motivated." Bloom argues that "prohibiting the wearing of [the cross necklace] places a substantial burden upon him . . . ." However, inmates are allowed to possess and/or wear both religious cross necklaces as well as rosaries at Augusta, there just are restrictions on the size and condition of these cross necklaces and rosaries. Bloom has not alleged how the restrictions on the size and condition of either the cross necklace or the rosary have substantially burdened his religious exercise. Accordingly, I find that Bloom has not met his burden of demonstrating that defendant has imposed a substantial burden on his religious exercise and, therefore, will grant defendant's motion for summary judgment as to Bloom's RLUIPA claims.

### IV. First Amendment

Bloom alleges that the denial of his rosary and cross necklace violated his right to free exercise of religion and the denial of his CD violated his right to free speech, all under the First

Amendment. I find that Bloom has not demonstrated a violation of the First Amendment and, therefore, I will grant defendant's motion for summary judgment as to these claims.

### A. Free Exercise of Religion

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I.; *see also Cruz v. Beto*, 405 U.S. 319, 322 (1977). Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 822 (1974). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show (1) that he holds a sincere belief that is religious in nature and (2) that prison regulations impose a substantial burden on his right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). Inmates' constitutional rights must be evaluated within the context of their incarceration, and the Supreme Court has long cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration." *Procunier v. Martinez*, 416 U.S. 396, 405 (1974).

If the inmate establishes a substantial burden on his sincerely held religious belief, the next inquiry is whether the prison regulation is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. Factors relevant in determining reasonableness of a regulation include (1) the connection between the regulation and a legitimate, neutral government purpose, (2) the existence of alternative means of exercising the right, (3) the impact accommodation of the right would have on guards, other inmates, and prison resources, and (4) the absence of ready alternatives to the regulation. *Id.* at 89-91. In weighing these factors, the court must "respect the determinations of prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991). The

prisoner carries the burden of proof under the *Turner* analysis to disprove the validity of the prison regulation at issue. *Overton v. Bazzetta*, 539 U.S. 126 (2003).

Bloom alleges that the defendant prohibited possession of his rosary and cross necklace in violation of the First Amendment. However, he does not dispute that he may possess a rosary and cross necklace which comply with the VDOC's and Augusta's regulations on such items. Therefore, even assuming that Bloom holds a sincere religious belief, I find that he has not demonstrated a substantial burden on his right to free exercise of religion.

Moreover, Bloom has not demonstrated that the regulations pertaining to his possession of a rosary and cross necklace are not reasonably related to a legitimate penological interest. According to Warden Jennings, the size of a medallion on a necklace is limited to 1 ½ inches because larger medallions "can easily be used as a weapon" and "compromise[] the security and safety of the prison staff and offenders." In addition, the medallion size restrictions are used "to assure uniformity and standardization as offenders transfer from one institution to another" in order to "reduce confusion and dispute." Rosaries are not allowed to be altered and must contain only black and/or white beads for safety and security reasons as well. According to Warden Jennings, "[a]ltering personal property provides offenders an opportunity to identify with a gang, so not allowing alterations reduces the security risk for gang involvement." Further, "[a]dding more or bigger beads to a rosary can pose other security concerns, including the ability to hide contraband in the beads or using the rosary with more beads added to it as a weapon. Allowing alterations to personal property circumvents security procedures and makes it difficult for security staff to properly and thoroughly search the property, as there is no uniformity as to what is allowed or not allowed. In order to minimize security risks and to assure standardization and uniformity with offender property, alterations cannot be allowed." Clearly, prison safety and

security are legitimate, neutral governmental purposes. *See Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) (prison security is a legitimate governmental purpose "central to all other corrections goals"); *Montcalm Publ. Corp. v. Beck*, 80 F.3d 105 (4th Cir. 1996) (finding that security, discipline, order, public safety, and rehabilitation interests need no defense); *Hodges v. Virginia*, 871 F.Supp. 873, 876 (W.D.Va. 1994); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) ("[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular . . . is legitimate."). Bloom is allowed to possess a cross necklace and a rosary, provided that they comply with VDOC and prison regulations. Allowing inmates to possess non-compliant necklaces and rosaries would place a burden on prison staff and resources because of the increased security that would be required as well as the hurdles it would create in searching inmate property for contraband. Accordingly, I find that Bloom has not met his burden under the *Turner* analysis to disprove the validity of the policies concerning medallions and rosaries and, therefore, I will grant defendant's motion for summary judgment as to Bloom's free exercise of religion claims.

**B. Free Speech**

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). With regard to prisoners, the Supreme Court has noted that "in the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives on the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

9

Bloom's CD was confiscated because it was homemade and could be recorded over. Bloom alleges that the CD contains music; however, it was not confiscated based on its content, but rather on its ability to be recorded over. According to Warden Jennings, a recordable CD is a security risk "because an offender may re-record on it, using it to record messages, escape directions, coded information, and other information to the detriment of the orderly operation of the prison." A re-recorded CD "could be shared with other offenders and/or mailed to an outside source." As previously recognized, prison safety and security are legitimate, neutral governmental purposes. *See Thornburgh*, 490 U.S. at 415. Bloom does not allege that he has no other means of listening to the music that is allegedly on the CD. If inmates were allowed to possess recordable CDs, it would create a huge burden on prison staff and resources because they would need to constantly listen to the CDs to confirm that no prohibited information was contained on them. Accordingly, I find that Bloom has not met his burden under the *Turner* analysis to disprove the validity of the policy prohibiting inmates from possessing recordable CDs and, therefore, I will grant defendant's motion for summary judgment as to this claim.

## V. Equal Protection

Bloom claims that the prohibition of his cross necklace and CD violated his right to equal protection under the Fourteenth Amendment. In support of his claim concerning the cross necklace, Bloom argues that he was allowed to possess the necklace at other VDOC facilities prior to his incarceration at August. In support of his claim concerning the CD, Bloom argues that he and other inmates at other VDOC facilities were and are permitted to possess CDs in the same recording format. I find that Bloom's allegations do not demonstrate an equal protection violation and, therefore, I will grant defendant's motion for summary judgment as to these claims.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause affords that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1982). To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977) (requiring proof of racially discriminatory intent or purpose to show an equal protection violation); *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Because of the heightened deference due to administrators in the prison context, a prison administrator's conduct that impinges upon an inmate's constitutional rights is valid as long as it is reasonably related to legitimate penological interests and is not an exaggerated response to a particular concern, even where the constitutional right allegedly infringed would otherwise warrant strict scrutiny review. *Morrison*, 239 F.3d at 654-55. To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003). Mere conclusory allegations of discrimination are insufficient to state a claim. *Spaulding v. Dixon, et al.*, No. 90-7315, 1990 U.S. App. LEXIS 15560, *2 (4th Cir. Sept. 4, 1990); *Chapman v. Reynolds*, 378 F. Supp. 1137, 1139 (W.D. Va. July 12, 1974).

I find that Bloom's allegations do not demonstrate that he was treated differently from other inmates with whom he was similarly situated or that any unequal treatment was the result

11

of intentional or purposeful discrimination. Accordingly, I find that Bloom has not demonstrated a constitutional violation and, therefore, I will grant defendant's motion for summary judgment as to Bloom's equal protection claims.

## VI. Ex Post Facto

Bloom alleges that the prohibition of his cross necklace violated the Ex Post Facto clause. In support of his claim, Bloom argues that he purchased his cross necklace before the restriction on medallion size was implemented. I find that Bloom's allegations do not establish an ex post facto violation and, therefore, I will grant defendant's motion for summary judgment as to this claim.

The Ex Post Facto Clause of Art. I, § 9, cl. 3, prohibits retroactive punishment of people for acts committed prior to the acts becoming illegal. As incorporated into the Fourteenth Amendment, this prevents a state from 1) charging a defendant with a crime that was not illegal at the time of the crime's commission, 2) aggravating a crime committed prior to enactment of the law, 3) increasing the punishment for a crime after it has been committed, or 4) changing the rules of evidence with respect to a crime already committed. *See Calder v. Bull*, 3 U.S. 386, 391 (1798). This prohibition is well recognized as applying "only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990) (citing *Calder*, 3 U.S. at 390-92). I find that Bloom has not demonstrated how the prohibition of his cross necklace violated the Ex Post Facto Clause. Accordingly, I will grant defendant's motion for summary judgment as to this claim.

## VII. Eighth Amendment

Bloom alleges that confiscation of his rosary, cross necklace, and CD constituted cruel and unusual punishment in violation of the Eighth Amendment. In support of these claims,

Bloom alleges that the confiscation of his personal items caused "severe and almost fatal harms to [him] by way of emotional stress and distress which resulted in [him] experiencing an ulceration of his stomach lining and erosion of his lower esophagus" which ultimately led to him almost "bleeding-out." I find that Bloom has failed to demonstrate any causal relationship between the confiscation of his property and his medical episode or that the defendant acted with deliberate indifference. Therefore, I will grant defendant's motion for summary judgment as to Bloom's Eighth Amendment claims.

The Eighth Amendment prohibits cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825 (1994). In doing so, the Eighth Amendment imposes certain duties on prison officials to provide humane conditions of confinement, ensure that inmates receive life's necessities, and take reasonable measures to guarantee the safety of inmates. *Id.* at 825. To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To act with a "sufficiently culpable state of mind," a prison official must not only know of the facts leading to the deprivation, but also know that deprivation would expose an inmate to a certain danger. *See Oliver v. Powell*, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002); *see also, DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 325 (E.D. Va. 2000).

Bloom's personal items were confiscated as contraband upon his arrival at Augusta. Two days later, Bloom's medical episode occurred. In support of defendant's motion for summary judgment, Nurse Meadows submits an affidavit stating that on June 3, 2011, she received a call from staff indicating that Bloom needed medical attention. Upon her arrival at Bloom's cell,

Nurse Meadows observed him sitting on the toilet, sweating and gassy. With assistance, Nurse Meadows transferred Bloom to a wheelchair and within minutes, he projectile vomited blood. Bloom was immediately sent to the hospital for medical treatment. Bloom returned to Augusta three days later. According to emergency department records, which Bloom provided to the court, the hospital determined that Bloom had erosive esophagitis (damage to the esophagus from stomach acid), two ulcers near his gastroesophageal junction, and a small Mallory-Weiss tear (a tear in the mucus membrane of the lower part of the esophagus or upper part of the stomach, near where they join). Bloom submits no evidence to support his theory that these medical complications were caused by the confiscation of his personal items two days prior, and Nurse Meadows indicates that a Mallory-Weiss tear does not occur in a couple of days. Accordingly, I find that Bloom has not demonstrated any causal relationship between the confiscation of his personal items and his medical episode.

Further, Bloom has not demonstrated that defendant Jennings acted with a "sufficiently culpable state of mind." Bloom's personal items were not confiscated by Jennings, but rather by a property officer who inventoried Bloom's belongings upon his arrival at Augusta. Bloom submits no evidence that Jennings even knew that Bloom's personal items had been confiscated prior to his medical episode. Therefore, I cannot find that Jennings acted with a sufficiently culpable state of mind and, thus, I will grant defendant's motion for summary judgment as to this claim.

## VIII.

For the reasons stated, I will grant defendant's motion for summary judgment and deny Bloom's motion for summary judgment.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the parties.

ENTER: This 25th day of March, 2013.

                                                           NORMAN K. MOON
                                                         UNITED STATES DISTRICT JUDGE